UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT P. WAALKES,

                Plaintiff,

      v.

GLOBAL FUTURES & FOREX, LTD.
and RIGHTSOURCE GROUP, LLC,
n/k/a RIGHTSOURCE HR, INC.,

                Defendants.

Case No. 1:05-CV-439

Hon. Richard Alan Enslen

**OPINION**

_____/

      This matter is before the Court on Plaintiff Robert P. Waalkes and Defendants Global Futures

and Forex, Ltd. ("Global Futures") and Rightsource Group, LLC's ("Rightsource") competing

motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motions have

been fully briefed and the Court discerns no reason to hear oral argument. W.D. MICH. LCIVR

7.2(d). For the reasons set forth below, the Court will grant in part and deny in part both motions

for summary judgment.

**I.    BACKGROUND**

      This lawsuit arises under the Family and Medical Leave Act of 1993 ("FMLA"). 29 U.S.C.

§§ 2601-54. Defendant Global Futures is a foreign currency dealer that provides its customers with

financial services over the internet. Defendant Rightsource describes itself as a professional

employer organization, which managed Defendant Global Futures' payroll processing, human

resource administration, and employee benefit administration.[1] In 2002, Defendants hired Plaintiff

---

[1] Defendants have not refuted Plaintiff's assertion that they are joint employers for purposes of the FMLA. *See* 29 C.F.R. § 825.106. Accordingly, the Court will refer to Defendants collectively unless individually referenced.

as a sales specialist.  By 2004, Plaintiff had been promoted to serve as Defendants' director of sales.

In this capacity, Plaintiff reported to Defendants' executive vice president of sales Ashraf Ebid.

Although Plaintiff apparently enjoyed some professional success during this period, he reports suffering from depression and generalized anxiety, and was diagnosed with the same by Dr. Erlund Larson, M.D. in February 2003.  Plaintiff suffered from anxiety attacks a couple times per week and Dr. Larson prescribed him medications to control his depression and calm his anxiety. Between February 2003 and May 2004, Plaintiff was examined by Dr. Larson ten times for his condition.  In August 2004, Plaintiff began seeing Dr. James Tweston-O'Toole, M.D., due to a change in health insurance coverage.

Sometime before September 15, 2004, Plaintiff's performance as Defendants' director of sales began to decline.  As a result, Ebid, a representative from Defendant Rightsource, and Plaintiff had a two hour meeting to discuss Plaintiff's job performance.  At that meeting, Ebid presented Plaintiff with an inter-office memorandum outlining ten categories where Defendants considered Plaintiff to be deficient.  The memorandum also imposed ten additional work rules that Plaintiff was now required to abide by.  Ebid referenced the memorandum as a "Final Warning."

Unbeknownst to Defendants, this criticism was too much for Plaintiff to take and he suffered an anxiety attack after the meeting.  Plaintiff went straight home, took his medication, and went to bed.  Plaintiff awoke around 6:45 p.m. later that day, telephoned Ebid to explain his absence from work, and informed him he would return tomorrow.

On September 16, 2004, Plaintiff arrived at Defendants' firm as promised but suffered another anxiety attack.  This time before leaving work, Plaintiff spoke with Defendants' vice

president Luanne Bleiler.  Bleiler memorialized that conversation in an e-mail to Defendant

Rightsource as follows:

> He said:  I just want you to know that I have to leave.  I tried to find Ashraf but he's
> not around.  I need to leave to see a dr. and will probably be admitted to the hospital.
> I can't take it anymore.  It's just too much for me.
>
> I said:  what's the matter is it stress?
>
> He said:  Yes
>
> I said:  well I'm sorry to hear about it – can I do anything?  Do you need a ride
> anywhere?  Do you need a ride home?
>
> He said:  no.  I'm ok to drive in fact I'm leaving here to go right to my Doctor
>
> I said:  well what do you want me to do?
>
> He said:  Tell Ashraf I had to leave to see a doctor and I don't know what going to
> happen from here.  And that I can't take it anymore.
>
> I said:  Do you want me to tell him that you're going to be admitted into the hospital
>
> He said:  He said no, just tell him that I had to leave to see my Dr. and I don't know
> what is going to happen.
>
> I said:  ok I'll tell him.

(Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. 7) (unaltered).  Later that day, Plaintiff called

Dr. Tweston-O'Toole and sought his assistance.  Dr. Tweston-O'Toole advised Plaintiff he had no

availability to see him, but agreed to prescribe Plaintiff anti-depressant medication.

Still on September 16, 2004, Defendants decided to terminate Plaintiff from their employ.

Defendants drafted a letter to that effect and delivered it to Plaintiff on the morning of September

17, 2004.  Plaintiff likely did not receive the letter until later that day because he was being examined

by Dr. Tweston-O'Toole on the morning of September 17, 2004.  Dr. Tweston-O'Toole  evaluated

Plaintiff's condition and determined that he would need to remain off work for a few days. Dr. Tweston-O'Toole drafted an excuse note advising Defendants that Plaintiff was "off work" on September 16 and 17, 2004, and would return on September 20, 2004, but made no mention of Plaintiff's condition. Defendants received Dr. Tweston-O'Toole's note by facsimile transmission on September 17, 2004. Plaintiff then requested his job back and Defendants refused. This lawsuit ensued.

## II.   LEGAL STANDARDS

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *Anderson*, 477 U.S. at 251-52.  The question is "whether a fair-minded jury

could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252.  "The 'mere

possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th

Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the

submission of *de minimis* evidence.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  Since both

parties have moved for summary judgment, each litigant will be accorded the status of movant and

non-movant when applicable.  *Lansing Dairy Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   DISCUSSION

In his Complaint, Plaintiff alleges four counts of liability against Defendants.  The first three

counts arise under the FMLA.   Count IV asserts a cause of action under Michigan's Sales

Representative Commissions Act, MICH. COMP. LAWS § 600.2961; however, Plaintiff consents to

dismissal of that claim and the Court will do so without further discussion.  As for the parties'

motions for summary judgment concerning Plaintiff's remaining claims, the Court finds as follows.

In his Motion for Summary Judgment, Plaintiff contends that Defendants interfered with his

rights guaranteed by the FMLA and retaliated against him for his exercise of those rights.[2]

---

[2] Plaintiff's other Count of FMLA liability subscribes to a theory that because Defendants
failed to notify him of his rights under the Act and designated his leave as FMLA qualifying,
Defendants violated the FMLA.  In support of their Motion for Summary Judgment, Defendants
proffered evidence demonstrating that FMLA notices were present in its facility and Plaintiff
concedes the same.   Accordingly, the Court will dismiss Count I of Plaintiff's Complaint.
Furthermore, even without Plaintiff's factual concession, the Court is unconvinced such a claim
independently states a cause of action under the Act.  *See Fink v. Ohio Health Corp.*, 139 Fed. Appx.
667, 671 (6th Cir. 2005) ("notice requirements of the FMLA only supports a cause of action where
'the inadequate notice effectively interfere[s] with plaintiff's statutory rights.'") (citations omitted);
*Turner v. Sullivan Univ. Sys. Inc.*, 420 F. Supp. 2d 773, 789 (W.D. Ky. 2006) ("There are two
distinct theories for recovery under the FMLA: the (1) interference theory and the (2) retaliation
theory.").  Thus, Plaintiff's assertions that Defendant failed to give him FMLA notice and properly
categorize his leave merge into either a theory of FMLA interference or retaliation, but cannot stand

Defendants Motion argues essentially the inverse.  Under the FMLA, eligible employees are entitled

to take up to 12 weeks of unpaid leave during any 12-month period for a qualifying medical or

family event.  29 U.S.C. § 2612(a)(1).  The Act also guarantees that their position, or its equivalent,

will be available upon their return to work.  *Id.* § 2614(a)(1).

A FMLA interference claim is derived from section 2615(a)(1), which provides that "it shall

be unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to

exercise, any right provided under [the Act]."

> To prevail on an interference claim, a plaintiff must establish that (1) he is an
> "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29
> U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C.
> § 2612(a)(1); (4) the employee gave the employer notice of his intention to take
> leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA
> benefits to which he was entitled.

*Cavin v. Honda of Am. Mfg. Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).  Specific to the third element

of FMLA interference, an eligible employee is entitled to leave because of, *inter alia*, "a serious

health condition that makes the employee unable to perform the functions of the position of such

employee."  29 U.S.C. § 2612(a)(1)(D).

To establish a *prima facie* case of FMLA retaliation Plaintiff must show that: (1) he availed

himself of the protections of the FMLA by notifying Defendants of his intent to take leave; (2) he

suffered an adverse employment action; and (3) there was a causal connection between the exercise

of his rights under the FMLA and the adverse employment action.[3]  *Edgar v. JAC Prods. Inc.*, 443

---

alone as their own cause of action.

[3] Plaintiff's FMLA retaliation claim is subject to the burden-shifting scheme first articulated
by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under
*McDonnell Douglas*—and because Plaintiff does not have any direct evidence of FMLA
retaliation—he must first satisfy his initial burden of demonstrating a *prima facie* case of FMLA

F.3d 501, 508 (6th Cir. 2006) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001)).

Plaintiff seeks summary judgment on three issues critical to his interference and retaliation claims.  To wit, that: (1) he suffered from a serious health condition; (2) he provided Defendants with proper notice of his need for FMLA leave; and (3) Plaintiff was terminated because he exercised his FMLA rights.  In their Motion for Summary Judgment, Defendants assail both of Plaintiff's claims on a single theory contending that Plaintiff's FMLA notice was deficient.

**A.      Serious Health Condition**

A "'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  Plaintiff has focused his Motion on whether his depression and generalized anxiety required continuous treatment by a health care provider.  The FMLA implementing regulations offer some guidance on which both parties rely.

> A serious health condition involving continuing treatment by a health care provider includes . . . [a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition.
>
> * * *
>
> A chronic serious health condition is one which:
>
> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

---

retaliation.  *Id.* at 802.  If he does so, the burden then shifts to Defendants to articulate a legitimate non-discriminatory reason for their adverse employment action.  If Defendants advance such a reason, the burden then shifts back to Plaintiff, who must show that the reason given was pretext and their decision to terminate him was actually designed to retaliate.  *Id.* at 807.

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, *etc.*).

29 C.F.R. § 825.114(a)(2) & (a)(2)(iii).

The evidence in this case supports a finding that Plaintiff's depression and generalized anxiety may be considered a chronic serious health condition, and thus, a condition covered by the FMLA; however, the evidence does not demonstrate, drawing every reasonable inference in Defendants' favor as the non-movant, *Anderson*, 477 U.S. at 251-52, that jurors would unequivocally find the same. In short, the evidence is not so one-sided that Plaintiff must prevail as a matter of law. *Id.* Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment on this ground.

**B.    Notice**

When an FMLA event is foreseeable, an employee is required to give his employer 30 days advance notice of his intention to take leave.[4]   29 U.S.C. § 2612(e)(1).  However, when leave is unforeseeable—as in this case—an employee should give his employer notice as soon as practicable under the facts and circumstances of each particular case.[5]   29 C.F.R. § 825.303(a).  "It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave . . . ."  *Id.*  The parties' motions dispute whether Plaintiff provided Defendants proper notice.

---

[4] Since the parties' motions overlap in this section, they are considered as competing motions for summary judgment. *See Lansing Dairy*, 39 F.3d at 1347.

[5] Defendants suggestion that Plaintiff's need for FMLA leave was foreseeable is absurd. Plaintiff could no better predict when he would suffer a panic attack than he could predict when he would suffer a heart attack or be involved in a car accident.

In furnishing FMLA notice, Plaintiff "need not expressly assert rights under the FMLA or even mention the FMLA," *Id.* § 825.303(b), but must only give Defendants enough information to reasonably conclude that an event described in FMLA § 2612(a)(1)(D) has occurred. *Hammon v. DHL Airways Inc.*, 165 F.3d 441, 451 (6th Cir. 1999). "[W]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Cavin*, 346 F.3d at 724 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

Beginning with Defendants' Motion, they contend that Plaintiff was terminated before he requested FMLA leave and, therefore, is no longer protected by the Act. *See Hammon*, 165 F.3d at 451; *Brohm v. JH Props. Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). The evidence in this case belies that contention.

On January 16, 2004, Plaintiff left Defendants (by way of his message through Bleiler to Ebid) with the following information: (1) he needed to leave the workplace to consult a physician; (2) he was suffering from stress; (3) he was not sure what would happen (*i.e.*, when he would able to return); and (4) he may be hospitalized (even though Plaintiff said not to relay that information to Ebid, its undisputed that Bleiler passed it along to Defendants). This information was supplemented by Dr. Tweston-O'Toole's note the next day indicating that Plaintiff needed to be "off work" on September 16 and 17, 2004, and would return on September 20, 2004.

A reasonable jury could easily find that Plaintiff supplied Defendants with adequate FMLA notice. *Cavin*, 346 F.3d at 724. Under the same logic, however, rational jurors could find Plaintiff's notice was insufficient and that he should have done more to appraise Defendants of the particular

facts and circumstances surrounding his condition.  Therefore, summary judgment in favor of either party is inappropriate.

#### C.  Causal Connection Between the Exercise of His Rights under the FMLA and the Adverse Employment Action

Plaintiff's remaining basis for summary judgment concerns the third prong of his FMLA retaliation claim (*i.e.*, establishing a causal connection between the averse employment action and the exercise of FMLA rights).  Plaintiff avers that Defendants terminated him because he sought leave due to his depression and generalized anxiety and requests summary judgment on that point. Plaintiff has put forth evidence which supports this contention.  Defendants have neglected to address that assertion in their Response.   Although technically not required to respond to a motion for summary judgment, *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 159 (1970)), once Plaintiff satisfies his burden of production, Defendants must present evidence to defeat the Motion.   *Anderson*, 477 U.S. at 248-50.  Because Plaintiff has presented evidence which establishes the third prong of a *prima facie* case of FMLA retaliation, and because Defendants have failed to refute that evidence, summary judgment in Plaintiff's favor is appropriate.  *See* FED. R. CIV. P. 56(e).

## IV.   CONCLUSION

Therefore, the Court will grant in part and deny in part the parties' motions for summary judgment.  A Partial Judgment consistent this Opinion shall enter.

                              /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:        RICHARD ALAN ENSLEN
        June 29, 2006          SENIOR UNITED STATES DISTRICT JUDGE

-10-